**UNITED STATES DISTRICT COURT**
**DISTRICT OF IDAHO**

| | |
|---|---|
| DELTA DAWN D.,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No.: 4:25-cv-00273-AKB-REP<br><br>**REPORT AND RECOMMENDATION** |

Pending is Plaintiff Delta Dawn D.'s Complaint (Dkt. 1), appealing the Social Security Administration's denial of her disability claim. This action is brought pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The alleged date of onset was April 1, 2022 (later amended to June 1, 2021). Having carefully considered the record and otherwise being fully advised, the undersigned enters the following Report and Recommendation.

## I. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the Administrative Law Judge's ("ALJ") findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). If the evidence would reasonably support affirming the ALJ's decision, or reversing it, the Court may not substitute its own judgment for the ALJ's judgment. *Ferguson v. O'Malley,* 95 F.4th 1194, 1199 (9th Cir. 2024).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.* The Court may determine the ALJ's reasoning by drawing reasonable inferences and determining an implied finding from the record. *Ferguson,* 95 F. 4th at 1200.

## II. REPORT

Plaintiff raises two assignments of error. First, Plaintiff argues that the ALJ erred at Step Three of the sequential process by concluding that her migraine disorder did not meet or medically equal Listing 11.02. Pl.'s Brief at 10-13 (Dkt. 20). Second, Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly evaluated her subjective symptom testimony. *Id*. at 13-18. The Court addresses each argument below.

### A. The ALJ Sufficiently Considered Listing 11.02

Plaintiff first argues that the ALJ failed to properly evaluate whether her migraine disorder medically equaled Listing 11.02 under SSR 19-4p. *Id*. at 10-13. Specifically, Plaintiff contends that the ALJ's Step Three discussion is incomplete and, thus, prevents meaningful judicial review because it does not expressly analyze the criteria set forth in SSR 19-4p, or explain why Plaintiff's migraines do not equal Listing 11.02B or 11.02D. *Id.*[1] The undersigned disagrees.

[1] Though not a listed impairment, a primary headache disorder may medically equal a listed impairment. "Epilepsy (Listing 11.02) is the most closely analogous listed impairment for a [medically determinable impairment] of a primary headache disorder." *See* SSR 19-49, 2019 WL 4169635, at *7. "Paragraph B of Listing 11.02 requires dyscognitive seizures occurring at

At Step Two, the ALJ recognized that Plaintiff's migraine headaches were a severe impairment. AR 17. At Step Three, the ALJ acknowledged SSR 19-4p's directive that primary headache disorders are evaluated by comparison to the neurological listings, including Listing 11.02. AR 18. The ALJ then concluded that Plaintiff's migraines did not satisfy the requirements of Listing 11.02 because "the medical evidence fails to demonstrate evidence of listing-level epilepsy (11.02)." *Id.* Plaintiff is correct: this discussion is brief. But the Ninth Circuit does not require an ALJ to discuss supporting evidence under any particular heading. *See Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001). Rather, the Court considers the decision as a whole in determining whether the ALJ adequately explained his reasoning. *See Ozolins v. Saul*, 849 F.App'x 682, 683 (9th Cir. 2021) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990)).

This case resembles *Andreha Nicole U. v. King*, 2025 WL 697178, at *4 (D. Idaho 2025), report and recommendation adopted, 2025 WL 693184 (D. Idaho 2025). There, the plaintiff also argued that the ALJ's Step Three analysis under Listing 11.02 was legally insufficient because it consisted of only a brief discussion. *Id.* Rejecting that argument, the court explained that, "[w]hile the ALJ did not provide a lengthy discussion of the migraine-related evidence at Step Three," the decision elsewhere contained a more fulsome discussion of the claimant's migraines, treatment history, and symptom allegations that supplied the factual basis for the Step Three conclusion. *Id.* The court concluded that it was not error for the ALJ to summarize his Listing 11.02 finding at Step Three rather than restate the same analysis in full. *Id.*

---

least once a week for at least 3 consecutive months despite adherence to prescribed treatment." *Id.* "Paragraph D of Listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning." *Id.*

The same is true here. Although the ALJ's Step Three discussion is short, the decision proceeds to discuss Plaintiff's migraine disorder and related symptoms in assessing Plaintiff's RFC at Step Four. *Compare* AR 18, *with* AR 21-24. The ALJ acknowledged Plaintiff's testimony that idiopathic intracranial hypertension caused chronic headaches, dizziness, blurred vision, and migraine episodes, and that Plaintiff experienced sensitivity to light and computer screens. AR 21. The ALJ then reviewed the longitudinal medical evidence, noting that, despite reported migraines and headaches throughout the record, they were largely manageable:

- July 2021: Plaintiff reported her migraines were "not too bad." AR 21 (citing AR 551).
- September 2021: Progress notes described Plaintiff's idiopathic intracranial hypertension and headaches as "stable." *Id*. (citing AR 488, 536).
- October 2021: Plaintiff denied dizziness or headaches, and later reported that Ajovy had improved her headaches "a great deal," leaving her with only "maybe 1 a week" lasting about five minutes and "really mild"; she also stated she "loves Ajovy" and "is delighted" with the results. AR 21-22 (citing AR 529).
- January 2022: Plaintiff reported a reaction to Ajovy and increased migraine frequency, but the migraines "seemed less severe." AR 22 (citing AR 507).
- April 2023: Plaintiff reported that riboflavin helped her migraines. *Id*. (citing AR 630).
- October 2023: Plaintiff reported only three migraines per month. *Id*. (citing AR 755).
- April 2024: Plaintiff reported that her migraines were "pretty well controlled" and "a lot better." *Id*. (citing AR 749).

Thus, there is no dispute that Plaintiff experiences migraines, and continued to experience migraines despite treatment. The ALJ acknowledged as much when he characterized Plaintiff's idiopathic intracranial hypertension and migraines as "severe" at Step Two. AR 17. But the ALJ reasonably concluded that the overall record reflected significant improvements over time and did not support the disabling frequency and severity of Listing 11.02, as alleged by Plaintiff.

Plaintiff argues that the ALJ was required to provide a more detailed discussion of the factors identified in SSR 19-4p at Step Three. Pl.'s Brief at 11-13 (Dkt. 20). But this argument

largely emphasizes the existence of Plaintiff's migraine disorder and the medical evidence documenting its diagnosis, symptoms, and treatment. However, again, the ALJ never disputed this – he expressly recognized idiopathic intracranial hypertension and migraines as severe impairments at Step Two. AR 17. The dispositive issue was not whether Plaintiff experiences migraines, but whether those migraines were of such frequency and severity as to medically equal Listing 11.02 and, therefore, presumptively preclude sustained work activity. On that question, the ALJ concluded they were not. While the ALJ's Step Three discussion could have been more detailed, the relevant inquiry is whether the decision, read as a whole, adequately explains that conclusion. *Supra*. Here, it does. The undersigned is able to meaningfully review the ALJ's reasoning and recommends that the ALJ sufficiently considered whether Plaintiff's migraine disorder medically equaled Listing 11.02.

To the extent Plaintiff's Step Three argument instead challenges the substance of the ALJ's evaluation of the frequency and severity of her migraine symptoms, that contention substantially overlaps with Plaintiff's second assignment of error challenging the ALJ's evaluation of her subjective symptom testimony. Because that issue is more appropriately addressed in the context of the ALJ's RFC determination, the undersigned addresses that argument next.

### B. The ALJ Reasonably Discounted Plaintiff's Subjective Complaints

Plaintiff next argues that the ALJ improperly discounted her subjective symptom testimony when assessing her RFC. Pl.'s Brief at 13-18 (Dkt. 20). Specifically, Plaintiff contends that the ALJ failed to provide legally sufficient reasons for finding her allegations concerning the severity and limiting effects of her symptoms surrounding her migraines and panic attacks not entirely consistent with the record. *Id*. Plaintiff contends that this error resulted in an RFC that failed to account for all of her functional limitations, and insists that, had

the ALJ properly credited her testimony and incorporated those limitations into her RFC, full-time work would have been precluded. The undersigned again disagrees.

1. <u>The Standard for Evaluating Subjective Complaints</u>

As the trier-of-fact, the ALJ is in the best position to make credibility determinations, and for this reason, his determinations are entitled to great weight. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair*, 885 F.2d at 603. However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id*.

The ALJ may engage in ordinary techniques of credibility evaluation, including consideration of (i) the claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct; as well as (ii) the claimant's daily activities, the claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those

symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* SSR 16-3p, available at 2017 WL 518034 (October 25, 2017). In short, it is solely within the ALJ's province to assess the credibility of the claimant's testimony. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

Generalized findings will not satisfy this standard though. The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46). This requires that the ALJ "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. at 493 (quoting *Reddick*, 157 F.3d at 722); *see also Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (in other words, "the 'clear and convincing' standard requires an ALJ to show his work").

On appeal, the district court's role is to review, not redo, this work. So long as there is substantial evidence for the ALJ's decision – even if there is another interpretation of the evidence – courts will not engage in second-guessing. *Thomas*, 278 F.3d at 959. When the ALJ's rationale for rejecting a claimant's testimony is "clear enough that it has the power to convince," the Court must affirm, whether the Court is personally persuaded by the analysis or not. *Smartt*, 53 F.4th at 499.

2. The ALJ's Evaluation of Plaintiff's Subjective Complaints

Plaintiff alleges that her myriad conditions – particularly her complaints regarding the frequency and impact of her chronic migraines and headaches, as well as her panic attacks – cause disabling pain and functional limitations. Pl.'s Brief at 13-18 (Dkt. 20). She points to her testimony that she experiences daily headaches, frequent migraines that can last from several

days to more than a week, visual disturbances, dizziness, and sensitivity to light and computer screens, which allegedly caused her to miss work, leave work early, or otherwise prevented her from performing her job. *Id*. at 13-14 (citing AR 57, 61-63). She likewise relies upon her testimony that anxiety and panic attacks make it difficult for her to leave her home, be around other people, and function in a work environment. *Id*. at 14-16 (citing AR 402, 685, 793, 844, 881-82). Plaintiff maintains that the ALJ's evaluation of this testimony resulted in an RFC that failed to account for all of her functional limitations.

Here, the ALJ acknowledged that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 21. For the reasons that follow, the ALJ's justification in this regard amounts to clear and convincing reasons for questioning Plaintiff's symptom testimony. The ALJ adequately showed his work.

First, the ALJ reasonably relied upon evidence demonstrating that Plaintiff's migraine headaches and mental health symptoms improved with treatment over time. An ALJ may properly consider the effectiveness of treatment when evaluating the intensity and persistence of a claimant's symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv)-(v); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The ALJ acknowledged Plaintiff's testimony that she experienced frequent migraines accompanied by visual disturbances, dizziness, and sensitivity to light and computer screens. AR 21. But, as stated above, the ALJ found that those allegations were not entirely

consistent with the longitudinal medical record because Plaintiff repeatedly reported improvement with treatment. AR 21-22. For example, the ALJ explained that treatment notes documented that Plaintiff's headaches were "not too bad" in July 2021; that Plaintiff's headaches and idiopathic intracranial hypertension were later described as "stable"; that Ajovy significantly reduced both the frequency and severity of her migraines, and that Plaintiff herself reported that she "love[d] the medication because it improved both her headaches and dizziness; and that, with riboflavin, Plaintiff's migraines were "pretty well controlled" and she was "a lot better." *Id*. (citing AR 488, 507, 529, 536, 551, 630, 749, 755). This evidence reasonably supported the ALJ's conclusion that Plaintiff's migraine symptoms, while undoubtedly genuine and severe in and of themselves, were not as persistently disabling as alleged and could be addressed via limitations within Plaintiff's RFC

The ALJ similarly observed that Plaintiff's mental health symptoms responded favorably to treatment. Although Plaintiff testified that panic attacks and contamination-related anxiety significantly limited her ability to leave her home and function in a work environment, the ALJ discussed counseling records documenting improvement. AR 22-25. In particular, the ALJ relied on the August 8, 2024 "Discharge Summary" prepared by Plaintiff's treating counselor, Shelley Ingles, LPC, who commented that, after 95 sessions, Plaintiff had learned coping skills and strategies to manage anxiety and obsessive-compulsive symptoms at home and in the community and had made "marked improvement" in treatment. AR 23,25 (citing AR 825-26). While Plaintiff points to evidence suggesting that her symptoms persisted despite treatment, the question before the Court is not whether the record could support a different conclusion. Instead, where the evidence reasonably supports more than one interpretation, the ALJ's interpretation must be upheld. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Because the ALJ reasonably concluded that Plaintiff's symptoms improved with treatment, he permissibly relied

upon that evidence in finding Plaintiff's allegations concerning the severity and limiting effects of her symptoms not entirely consistent with the record.

Second, the ALJ reasonably concluded that Plaintiff's reported daily activities were inconsistent with the degree of limitation she alleged from her panic attacks and related mental health symptoms. An ALJ may properly consider whether a claimant's daily activities are inconsistent with her allegations of disabling limitations. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *Smartt*, 53 F.4th at 499 (a claimant's daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of totally debilitating impairment.") (quoting *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012)); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, although Plaintiff testified that panic attacks and contamination-related anxiety made it difficult to leave her home and be around other people, she also acknowledged that she continued to maintain a driver's license and drove several times each week to run errands and grocery shop. AR 52-53, 65-66. The ALJ reasoned that operating a motor vehicle is a "very dynamic task in a changing environment" requiring a driver's sustained attention, executive functioning, decision making, hazard perception, and the ability to respond appropriately to changing circumstances:

> Since the primary role of any motor vehicle operator is the safe control of the vehicle within the traffic environment, driving can be considered a complex task that requires the making of continuous decisions/judgment calls. It also requires social interaction, and the ability to multitask while dealing with external and internal stimuli. Driving as an activity is therefore made up of strategic decisions (i.e. route-choice while driving, mirror use, vehicle speed, vehicle condition, response to emergency vehicles, etc.), maneuvering decisions (i.e. reaction to: the behavior of other traffic participants, road hazards, pedestrians, animals, etc.), and control decisions (i.e. basic vehicle operation, radio and/or cellphone operation, etc.), all of which indicate functioning at a level in excess of that alleged by the claimant.

AR 23. According to the ALJ, Plaintiff's admitted ability to drive demonstrated that she retained greater cognitive and functional abilities than alleged and therefore undermined her testimony that her mental impairments prevented her from functioning outside the home. *Id*.

Plaintiff responds that the ALJ's reliance on her ability to drive was misplaced. According to her, the ALJ primarily relied upon normal mental status examinations – which Plaintiff contends fall short of evaluating panic attacks – and otherwise identified only her ability to drive as a basis for discounting her testimony. Pl.'s Br. at 15-16 (Dkt. 20). Plaintiff further argues that driving is an "illogical basis" for rejecting her allegations because she testified that she drove only a couple of times per week and occasionally had to pull over because of headaches or blurry vision. *Id*. at 16. The undersigned is ultimately not persuaded.

The relevant inquiry is not whether Plaintiff drove without limitation or discomfort. Rather, the question is whether the ALJ reasonably concluded that Plaintiff's admitted ability to independently operate a motor vehicle was inconsistent with her allegations that panic attacks and anxiety prevented her from functioning outside the home. *See Smartt*, 53 F.4th at 499; *see also Molina*, 674 F.3d at 1113 ("The ALJ could reasonably conclude that Molina's activities, including walking her two grandchildren to and from school, attending church, shopping, and taking walks, undermined her claims that she was incapable of being around people without suffering from debilitating panic attacks."). Here, the ALJ permissibly relied on Plaintiff's ability to drive as one factor – alongside the treatment record – in evaluating the consistency of her subjective allegations. Because that interpretation is rational and supported by substantial evidence, it should not be disturbed merely because the record could support a different interpretation. *See Burch*, 400 F.3d at 679.

Taken together, these reasons amount to clear and convincing explanations as to why the ALJ found Plaintiff's testimony not entirely credible. Crucially, the Court's role is not to decide

whether Plaintiff is disabled under the applicable statutes and regulations, or even whether she suffers from chronic, disabling limitations. In assessing Plaintiff's credibility, the ALJ was not focused on whether Plaintiff had limiting disorders, but on whether these impairments prevent her from engaging in any full-time work. It is the reasonableness of *these* findings that the Court must review on appeal. On those points, Plaintiff identifies conflicting evidence in support of her position. Even though this conflicting evidence may not have been given the weight that Plaintiff would have preferred, the ALJ's decision to question her subjective symptom allegations contains clear and convincing reasons for doing so. The Court uses – as it must – that standard. Accordingly, the ALJ will not be second-guessed given the justifications provided. *Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.").

Plaintiff has not shown that the ALJ erred in evaluating her subjective complaints. Remand is not warranted on this issue.

## III. CONCLUSION

The ALJ, as fact-finder, must weigh the evidence, draw inferences from facts, and determine credibility. The ALJ has provided reasonable and rational support for his conclusions, even if such evidence is susceptible to a different interpretation. Accordingly, the ALJ's decisions as to Plaintiff's disability claim were based upon proper legal standards and supported by substantial evidence. The Commissioner's decision should be affirmed and Plaintiff's Complaint for Review should be denied.

///

///

///

## IV. RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that the decision of the Commissioner be AFFIRMED, that Plaintiff's Complaint (Dkt. 1) be DENIED, and this action be DISMISSED in its entirety, with prejudice.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty (20) pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period." Additionally, the other party "may serve and file a response, not to exceed twenty (20) pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

DATED: August 13, 2026

______________________________
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge